## MARSHFIELD BREWING COMPANY v. DR. A. M. SCHMIDLER.[1]

April 18, 1946.

No. 34,154.

*Maurice L. Halpern* and *Irvin E. Schermer,* for appellant.
*George W. Tanner* and *Karl Covell,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to rescind a contract for the purchase by it of a brewery at Grafton, Wisconsin, alleged to have been procured by defendant through fraud, and to recover $1,000 paid thereunder. In answer to a special interrogatory, the jury found defendant not guilty of the fraud alleged. Upon a finding adopting the verdict, decision went for defendant. Plaintiff appeals.

The only question here is whether the evidence establishes as a matter of law that plaintiff was induced by fraud on the part of defendant to enter into the contract.

In substance, the charge of fraud is that defendant represented to plaintiff that the brewery was complete and ready in all respects for making beer and that the representation was false because of the fact that there was no equipment in the washroom and racking

[1]Reported in 22 N. W. (2d) 553.

room, for lack of which the brewery could not be successfully operated for the purpose mentioned. Defendant admits that there was no equipment in these rooms. Hence the only dispute between the parties is whether defendant made the misrepresentations in question and whether plaintiff relied upon them in entering into the contract.

There was evidence that defendant acquired ownership of the brewery through foreclosure of two mortgages; that the corporation which owned the brewery had been in receivership; that, as a result of litigation, a Wisconsin court determined that, as between the receiver and defendant, only the heavy equipment in the brewery was not personalty and that the receiver was entitled to all personalty; and that the receiver sold to one Tankenoff or to the Bloomer brewery the washroom and racking-room equipment as personalty, to which he was entitled under the court's decision. Apparently, as we shall presently show, plaintiff's president, L. A. Hartl, who represented it in the negotiations resulting in the contract with defendant, knew of the litigation and the sale by the receiver of the equipment in question.

Plaintiff's evidence consisted of Hartl's testimony to the effect that, prior to signing the contract, defendant made both written and oral representations that the brewery was complete and ready in all respects for making beer. The written representations consisted of some papers handed to Hartl by defendant, as the latter stated, for Hartl's "own information." There was no affirmative representation that any statements in the papers were true. The papers consisted of drawings or plans of the brewery, photographs of it, and two printed advertisements taken from the *Brewers Digest* and a newspaper in which they had been published. The advertisement published in the *Brewers Digest* stated that the brewery had among other things a "fully equipped wash house, [and] racking room." The newspaper. advertisement stated that the brewery was "complete and ready for operation" and specifically mentioned the "wash house," "bottle house," and "storage house." The oral representations, according to Hartl's testimony, consisted of a state-

ment made to him by defendant that the brewery was complete and ready for operation except for some bottling machinery and half barrels.

Defendant in his testimony denied that he made the representation in question to Hartl, except insofar as it related to the bottling machinery and half barrels. He testified also that he told Hartl that "all the big items" which had been construed by the court in the litigation mentioned as "not to be personal property" were in the brewery, and that he would send to Hartl, as soon as he could obtain it from the War Production Board, in whose possession it then was, "a specific inventory of these larger items which represented the equipment of the brewery." Thereupon, the parties signed the contract, and plaintiff paid to defendant $1,000 thereunder.

Hartl had not examined the brewery before signing the contract and making the payment in question, but did so shortly afterward in company with Richard C. Bonner, attorney for the receiver. When they arrived at the brewery and before the examination began, Hartl told Bonner, according to the latter's testimony, that he knew "that there was no personal property in the brewery" and "that the personal property had been sold to the agents of Tankenoff." There was some further conversation in which Hartl stated in effect that plaintiff was not buying the property to operate it as a brewery for making beer, but as a cold-storage plant.

Within a few days afterward, defendant sent the inventory, which he had obtained meanwhile from the War Production Board, to Hartl. The inventory showed that the washroom and racking-room equipment had been checked off as not included therein. A few days afterward plaintiff charged defendant with having procured the contract through fraud and demanded a rescission thereof, with restitution of the $1,000 paid thereunder.

We think that the evidence raised fact issues for decision by the trier of fact whether defendant made the fraudulent representation in question to procure the contract and, if so, whether plaintiff relied upon it in entering into the contract. As against plaintiff's evidence of an express oral representation and the implied one

from the written and printed matter to the effect that the brewery was complete and ready for operation and that the washroom and racking room were fully equipped is defendant's evidence denying that he made the representation in question and showing that he represented in effect that the only equipment in the brewery was the property not removed by the receiver under judgment or order of the court as personalty and that the inventory would show what property still belonged to the brewery. This representation clearly disclaimed that the washroom and racking room had any personal property in them. It asserted that the "big items" were in the brewery, but what these were could be determined only in the future by an examination of the inventory. The evidence also raised a question of fact as to whether plaintiff relied on the misrepresentation charged, because of the fact that Hartl apparently knew of the prior litigation and that the personalty had been removed from the brewery under sale by the receiver. Whether defendant made a misrepresentation to induce plaintiff to enter into a contract and whether plaintiff in so doing relied upon the alleged misrepresentation are questions of fact for the trier of fact and not of law for the court, where, as here, the evidence with respect to those questions is in conflict. Bulau v. Bulau, 208 Minn. 529, 294 N. W. 845; Kraus v. National Bank of Commerce, 140 Minn. 108, 167 N. W. 353; 3 Dunnell, Dig. & Supp. § 3840.

Affirmed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.