CITY OF INDIANAPOLIS, Appellant (Defendant Below),

v.

TWIN LAKES ENTERPRISES, INC., Appellee (Plaintiff Below).

No. 30A01–9005–CV–187.

Court of Appeals of Indiana, First District.

March 28, 1991.

Rehearing Denied May 16, 1991.

Mary Ann Oldham, Thomas M. Crusillo, Asst. Corp. Counsel, City–County Legal Div., Indianapolis, for appellant.

David E. Wright, Ronald G. Sentman, David G. Berry, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for appellee.

ROBERTSON, Judge.

The City of Indianapolis (the City) appeals from a jury verdict in favor of Twin Lakes Enterprises, Inc. (Twin Lakes) in Twin Lakes' suit for damages for breach of contract or, alternatively, for compensation for the City's unjust enrichment in quasi-contract. The City claims the evidence is insufficient to support a judgment based upon its breach of contract or, if the evidence is sufficient, Twin Lakes' waiver precludes a recovery for breach of contract. The City also alleges that the trial court erroneously submitted the issue of quasi-contract to the jury when a contract governed the relationship of the parties and that the trial court submitted an erroneous instruction to the jury on the issue of quasi-contract. The City further contends the trial court improperly instructed the jury on other matters and refused to submit a proper instruction. Finally, the City claims the trial court improperly awarded prejudgment interest to Twin Lakes. We affirm in

part and remand for modification of the judgment.

The evidence most favorable to the judgment below reveals that the City sought bids for construction of a rowing course on the Eagle Creek Reservoir for the Pan Am Games and entered into a contract with Twin Lakes for that purpose. The contract stated that Twin Lakes was to provide all labor and materials and do all things necessary for the proper construction and completion of the project in accordance with the plans and specifications provided by the City's subcontracted engineers. The contract provided that Twin Lakes was to dredge the site of the rowing course of silt and sand by means of a suction hose to produce a flat, mud bottom in the bed of the reservoir. The evidence also reveals that the City, through its employees, knew of the existence of large obstructions on the floor of the reservoir inconsistent with the manner in which Twin Lakes was to dredge the reservoir bed.

## I.

Is the evidence sufficient to support the judgment for breach of contract; and, if so, has Twin Lakes waived recovery on that issue?

■ The City claims the evidence presented does not establish a breach of contract. Twin Lakes counters with a contention that the City breached the contract when it failed to fully disclose the conditions at the proposed site of the rowing course, specifically the existence of the large obstructions. We conclude such evidence was sufficient to establish a breach of the contract by the City.

When we review the sufficiency of the evidence to support the judgment of the trial court, we neither weigh evidence nor judge witness credibility. Rather, we will affirm the judgment of the trial court if it is supported by sufficient evidence when viewed most favorably to the appellee, here Twin Lakes. *Jos. Schlitz Brewing v. Central Bev. Co., Inc.* (1977), 172 Ind.App. 81, 359 N.E.2d 566.

The City first alleges that the contract between the parties placed the burden upon Twin Lakes to discover any obstructions which subsequently hindered its progress of the project. The City cites the following pertinent part of the contract:

BIDDERS SHALL EXAMINE THE SITE AND THOROUGHLY FAMILIARIZE THEMSELVES WITH THE SITE AND ALL CONDITIONS IN CONNECTION THEREWITH. LACK OF FAMILIARITY WITH THE SITE AND PRESENT CONDITIONS WILL NOT BE CONSIDERED AS JUSTIFICATION FOR CHANGES OR EXTRA CHARGES OF ANY KIND, SINCE ANY CONTRACT, IN WHOLE OR IN PART WILL BE BASED ON THE ASSUMPTION THE BIDDER KNOWS, UNDERSTANDS AND ACCEPT THESE EXISTING CONDITIONS.

However, as Twin Lakes contends, the evidence also shows the City assumed at least some responsibility to inform Twin Lakes about the conditions of the dredge site. The contract stated that Twin Lakes was to provide all labor and materials and do all things necessary for the proper construction and completion of the project in accordance with the plans and specifications provided by the City. These plans and specifications contained no information about the obstructions at the site even though Twin Lakes was expected to rely upon them when it dredged the site. In addition, the contract provided that an on-site meeting would be scheduled by the City for the benefit of the bidders to acquaint them with the site conditions and to answer bidding questions. Twin Lakes attended this meeting, but the City provided no information about the existence of obstructions on the bed of the reservoir.

We will address one of the City's contentions at this point because to do so will facilitate our review. The City claims the evidence is insufficient to show it knew of the dumping of large obstructions at the site where dredging was to take place. The City maintains that it has consistently denied having had such knowledge and that any dumping about which it had knowledge occurred outside the dredge site in very

small amounts. However, the evidence also shows that the City defined the job in the contract as a sand and silt dredging operation. Twin Lakes was supposed to accomplish the work with a suction hose, which an employee for the City had told one witness could not be done because of the existence of obstructions in the dredge site. Moreover, although much of the evidence addresses itself to mining, excavation, and dumping of materials on land adjacent to the reservoir, there is also evidence that the stream bed for the creek near the dredge site was moved after these activities had begun. The record therefore contains sufficient evidence from which the jury could have concluded that the large obstructions had been dumped in the reservoir with the City's knowledge at the location which eventually became the dredge site and that the City had known of the large obstructions both before and after it had entered into the contract.

We now proceed with our analysis and note that the question of whether a breach of contract has occurred is a question of fact to be determined by the jury. *Strong v. Commercial Carpet Co., Inc.* (1975), 163 Ind.App. 145, 322 N.E.2d 387, *rehearing denied in part*, 163 Ind.App. 145, 324 N.E.2d 834. The above recited evidence is sufficient for the jury to conclude that the City led Twin Lakes to believe, through the language of the contract, that it would disclose what it knew about the site conditions but then failed to inform Twin Lakes that it had previously permitted others to dump large obstructions at the dredge site. Moreover, the jury could have concluded that Twin Lakes went to the location of the project with City representatives, examined the site, and attempted to thoroughly familiarize itself with the site and its conditions, only to be thwarted by the City's silence about large obstructions, which lay underwater and out of sight, at a time when the City had assumed responsibility to acquaint Twin Lakes with the site. If all of these these facts are taken as true, as we must assume they were, then the City failed to perform the obligations it assented to undertake in the agreement and thereby breached the contract.

The City also claims the evidence is insufficient in several other respects to support a breach of contract on its part. Specifically, the City alleges it was not proved to have breached the contract when it flooded the dredge site, when it failed to pay on the contract, or when it expelled Twin Lakes from the project site in favor of another contractor. As we have concluded the evidence is sufficient to support the judgment for breach of contract for failure to disclose site conditions, these contentions will not provide the City with any relief on this issue. We will revisit these contentions below, however, when we discuss other issues raised by the City.

■ The City next alleges that, even though it may have breached the contract with Twin Lakes, the evidence shows Twin Lakes waived the breach and continued with the contract. The City therefore concludes Twin Lakes has waived any recovery. Twin Lakes counters with an assertion that it did not learn of the City's knowledge of the dumping on the dredge site until a short time before trial, long after it had been expelled from the site. The determination of whether or not there has been a waiver of a contract provision is ordinarily a question of fact. *Phillips v. Green Street Corp.* (1968), 143 Ind.App. 30, 237 N.E.2d 590. We conclude the City merely wishes us to reweigh the evidence and to rejudge the credibility of the witnesses on this issue and is therefore not entitled to the relief it seeks.

Waiver has been defined as an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it. *Id.* The burden to prove this defense was on the City, as it was the party which claimed it. *Ogle v. Wright* (1977), 172 Ind.App. 309, 360 N.E.2d 240.

There is sufficient evidence to support the conclusion that the City did not meet its burden to prove waiver. The City points to two change orders, entered into by the parties, which it contends show that Twin Lakes agreed to continue with the project after it knew of the underwater obstruc-

tions. The City therefore concludes that the parties modified the contract and Twin Lakes waived its right to sue the City for breach based on the obstructions. However, this view ignores the evidence which shows that, although Twin Lakes knew of the obstructions when it entered into the change orders, it did not know about the City's knowledge of and silence about the matter.

As noted, the evidence shows that the City defined the job in the contract as a sand and silt dredging. Twin Lakes was supposed to accomplish the work with a suction hose, which an employee for the City had told one witness could not be done because of the existence of obstructions in the dredge site. Twin Lakes did not learn of the City's knowledge about the obstructions until after it had been terminated from the project. Twin Lakes could easily have thought the City was just as surprised as it was to learn of the obstructions, which was not the case.

The City's knowledge and silence, in the face of its voluntary assumption of obligations to the contrary, not only constituted a breach of the contract but also effectively kept Twin Lakes from discovering the breach. Therefore, the evidence supports the conclusion that Twin Lakes did not intentionally relinquish a known right to pursue the City for breach of the contract under these facts because any waiver involved neither knowledge of the existence of that right nor the intention to relinquish it.

## II.

Did the trial court erroneously submit the issue of quasi-contract to the jury, and instruct it on that issue, when a contract governed the relationship of the parties?

Our courts have used the phrases quasi-contract, contract implied-in-law, constructive contract, and *quantum meruit* synonymously. *Nehi Beverage Co., Inc. v. Petri* (1989), Ind.App., 537 N.E.2d 78, 85, *trans. denied.* These are legal fictions, created by courts of law, to provide a remedy which prevents unjust enrichment and thereby promotes justice and equity. *Id.* This situation is complicated, however, because *quantum meruit* traditionally had a specific meaning and legal context within which it applied.

Quasi-contract, contract implied-in-law, and constructive contract each refer to the situation in which obligations are imposed by law, without regard to the assent of the parties bound, to permit a contractual remedy where no contract exists in fact but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise. *Clark v. Peoples Savings & Loan Ass'n of De Kalb County* (1943), 221 Ind. 168, 46 N.E.2d 681; *Bd. of Comn'r of Decatur Co. v. Greensburg Times* (1939), 215 Ind. 471, 19 N.E.2d 459, *rehearing denied by*, 215 Ind. 471, 20 N.E.2d 647; *Ramsey v. Ramsey* (1889), 121 Ind. 215. In contrast, the remedy of *quantum meruit* is a breach of contract remedy available to an innocent party to recover the value of services performed under the contract. *See Federal Life Ins. Co. v. Maxam* (1919), 70 Ind.App. 266, 117 N.E. 801. Nevertheless, the purpose of each is similar in that it seeks to provide the injured party with the fair value of work and services rendered and thus prevent the unjust enrichment of another. The pleadings and the instruction on the issue of quasi-contract reveal that the plaintiff might have sought recovery either within or without the contract. We will therefore discuss each in our analysis.

A relation, which the law recognizes as contractual, may arise between the parties in three ways. First, the terms of the agreement may have been uttered, avowed, or expressed, at the time it was made; in which case an express contract results. Second, circumstances may have arisen, or acts may have been done which, according to the dictates of reason and justice, and the ordinary course of dealing, or the common understanding of men, show a mutual intention to contract; in which case an implied[-in-fact] contract arises. Third, there may have been no intention to contract at all, and yet one may have come under a legal duty to another of such character

that the law precludes him from asserting that he did not agree to perform it; thus, by a function of law a contract results by construction or implication. Implied[-in-law] or constructive contracts, of this latter class, are similar to the constructive trusts of equity. They arise out of a state of facts from which the law alone, contrary to the intention of the parties, produces the obligation by compulsion, or "by force of natural equity." *Ramsey*, 121 Ind. at 220.

As a general rule, there can be no constructive contract where there is an express contract between the parties in reference to the same subject matter. *Snater v. Walters* (1959), 250 Iowa 1189, 98 N.W.2d 302. *See Indianapolis Raceway Park, Inc. v. Curtiss* (1979), 179 Ind.App. 557, 560, 386 N.E.2d 724, 726 (voluntary allocation of risks by contract and failure to perform does not generally give rise to an action for unjust enrichment); *Page v. Schrenker* (1982), Ind.App., 439 N.E.2d 694 (on the theory that the agreements were invalid, appellant claimed *"quantum meruit"* controlled; the court held the existence of a valid express contract for services precluded implication of a contract covering the same subject matter). In this case, however, the express contract arguably covered a different subject matter than that upon which Twin Lakes sought a remedy in quasi-contract. Twin Lakes assented to dredge the site on the reservoir of sand and silt to produce a soft, mud bottom for the rowing course. The evidence is sufficient to support the conclusion that the City in fact contracted for the removal of large obstructions from the dredging site when it knew full well that its goal could not be accomplished by the use of a suction hose, as was represented to Twin Lakes.

■ While the question of whether a certain or undisputed state of facts establishes a contract is one of law for the court, where the existence and not the validity or construction of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether a contract in fact exists. *See*

*Robinson Machine Works v. Chandler* (1877), 56 Ind. 575; *West v. Davis* (1920), 73 Ind.App. 649, 127 N.E. 806. Under the law of contracts, the intention of the parties is a factual matter to be determined by the trier of fact from all of the circumstances. *Continental Grain Co. v. Followell* (1985), Ind.App., 475 N.E.2d 318, *trans. denied.* Similarly, whether a party to a contract made misrepresentations to induce the other to enter into the contract and whether the latter relied on the alleged misrepresentations, are questions of fact which should be submitted to the jury where the evidence on such questions is in conflict. *Marshfield Brewing Co. v. Schmidler* (1946), 221 Minn. 486, 22 N.W.2d 553. *See Rice v. Caldwell* (1928), 87 Ind.App. 616, 161 N.E. 651.

■ Where there is probative evidence to support the conclusion that there was no meeting of the minds between the parties, we will not disturb that conclusion. *Continental Grain*, 475 N.E.2d at 321. We conclude that the above recited conflict in evidence is sufficient to support a determination that the minds of the parties did not meet due to the misrepresentations of the City. The jury could have properly found that Twin Lakes only agreed to dredge sand and silt from the site on the reservoir with a soft, mud bottom for the rowing course and that the City sought the additional removal of large obstructions from the dredging site when it knew full well that its goal could not be accomplished by the means Twin Lakes was led to believe in the contract would be sufficient. In addition, the jury could have properly concluded Twin Lakes relied upon these misrepresentations when it bid on the contract. The trial court therefore committed no error when it allowed the jury to determine whether Twin Lakes was entitled to recover for breach of contract or in quasi-contract if no contract was proved. *See Foster v. United Home Improvement Co., Inc.* (1981), Ind.App., 428 N.E.2d 1351 (no error in instruction to jury that it could award recovery for *"quantum meruit"* if contract was not proved).

In contrast, it is the law of Indiana that where one party to an executory contract repudiates it and refuses to be bound by it any longer, the injured party has the right to elect and pursue any of several remedies. Where the contract is of such a nature that there may be a recovery for part performance, the injured party may treat the contract as rescinded and recover in *quantum meruit* as far as it has performed. In the alternative, it may keep the contract alive for the benefit of both parties, remaining at all times ready, willing, and able to perform his part of the contract; then, at the time fixed for performance, it may sue and recover according to the terms of the contract on the theory that it has fully performed and discharged all of the duties and obligations imposed by the contract or that it has done so except as prevented by the other party. Finally, it may treat the breach or repudiation as putting an end to the contract for all purposes of performance and sue at once to recover the damages due from the wrongful refusal to carry out the contract according to its terms. *Federal Life Ins.*, 70 Ind.App. 266, 117 N.E. 801, *cited with approval in Armstrong v. Illinois Bankers Life Assn.* (1940), 217 Ind. 601, 29 N.E.2d 415, *rehearing denied by*, 217 Ind. 601, 29 N.E.2d 953.

■ In this latter instance, the injured party is not bound to give further notice of the election to the defaulting party before suit is brought and is not bound to show it had been at all times ready, willing, and able to perform its part of the contract after the other party repudiated the contract. If it was not in default at the time of such repudiation and was adhering to and honoring the contract when repudiated by the other contracting party, it has discharged the obligations imposed upon it. Upon the election to treat the renunciation, whether by declaration or by acts and conduct, as a breach of the contract, the rights of the parties are fixed and the contract is at an end except for the purposes it may serve in a suit for damages for the breach. *Id.*

■ In the present case, the City excluded Twin Lakes from the dredging site before Twin Lakes discovered the City had known of the large obstructions at the site. The evidence above recited shows the City breached its contract with Twin Lakes, effectively refused to be bound by its obligations in the future, and expelled Twin Lakes from the dredge site. Twin Lakes thereafter had no opportunity to keep the contract alive for the benefit of both parties or to remain at all times ready, willing, and able to perform its part of the contract. Twin Lakes therefore had the right to elect and pursue either of the two remaining remedies.

Here, Twin Lakes and the City entered into a contract which obligated Twin Lakes to dredge sand and silt from the site of the anticipated rowing course. When Twin Lakes encountered large obstructions in the site, the parties entered into a change order, a written modification of the contract, as required by the original contract to cover the costs of the continued, more difficult dredging operation. However, the City did not inform Twin Lakes about the extent of the dumping at the site, which resulted in the need for a subsequent change order and modification of the contract. Again after the second change order, the City did not inform Twin Lakes about the extent of the dumping but insisted that Twin Lakes continue to dredge the site, which it did.

The contract and the circumstances in this case were of such a nature that Twin Lakes could only partly perform its obligations. In fact, Twin Lakes continued to perform the dredging after the money provided under the original contract and the charge orders had been expended and until it was expelled from the site. The failure to inform Twin Lakes of the nature and extent of the obstructions, in the face of assumed obligations to the contrary, went to the very heart of the agreement to dredge the site. As such, the breach of that obligation constituted a material breach of the contract. In addition, this breach placed Twin Lakes in the position of being pressured to complete the contract when the City knew it could not have been

performed under the original or modified terms. The jury could have concluded that this failure to inform caused Twin Lakes to enter into the contract at an amount far below what it would have taken had it known the true nature of the reservoir bed. Twin Lakes was entitled to seek recovery for the part of the contract it performed. After it was excluded from the site, Twin Lakes was entitled to treat the contract as rescinded and recover, in *quantum meruit*, the extent of its performance for the fair value of its labor not yet compensated.

In the alternative, Twin Lakes could have considered that the breach discussed above put an end to the contract for all purposes of performance and could have sued at once to recover the damages due from the wrongful refusal to carry out the contract according to its terms. Of course, Twin Lakes did not learn of the breach until after it had been excluded from the dredge site and could not sue for the breach until it had gained that knowledge.

The City claims that, although these remedies may be possible, not more than one was available. This appears to be an assertion that Twin Lakes should have made an election of which remedy it would proceed upon. We first note that our general rules of pleading allow a pleading to set forth two or more statements of a claim alternatively or hypothetically. Ind. Trial Rule 8(E)(2). The City's claim that Twin Lakes should not have been allowed to proceed upon both breach of contract for damages and for quasi-contract, because these remedies are mutually exclusive, ignores the fact that our rules allow Twin Lakes to plead in the alternative. Both issues need not have been precluded from the jury on this ground.

We proceed to consider the quasi-contract instruction, the submission of which the City claims is error. The City objected to the instruction because quasi-contract should not have been an issue in the case as it was not applicable. We will address this contention. Incidentally, the City also now claims on appeal that the instruction incorrectly states the law. The City did not address this contention to the trial court,

and we will not address it for the first time on appeal. *Scott v. Krueger* (1972), 151 Ind.App. 479, 280 N.E.2d 336.

The instruction states, in essence, that if the jury found the contract had not been executed or finished, the theory of contract implied-in-law would be brought into the case so that a fair amount could be awarded to Twin Lakes for services rendered. In order to recover upon that basis, Twin Lakes would have to show that the benefit had been rendered to the City under circumstances which demand that it compensate Twin Lakes in order to prevent an unjust enrichment to the City. If the jury found by a preponderance of the evidence that Twin Lakes had rendered valuable services to the City, under circumstances where it was only fair that Twin Lakes be compensated so that the City was not unjustly enriched, then the jury could award damages to Twin Lakes for the reasonable amount of services rendered.

This issue is answered by *Model Clothing House v. Hirsch* (1908), 42 Ind.App. 270, 85 N.E. 719, in which the plaintiff sought recovery either upon the oral contract or for services rendered. The defendant in that case brought an appeal and claimed, *inter alia,* that the trial court erroneously overruled its motion to compel the appellee to elect upon which paragraph he would depend for recovery, that is, for contract damages or for *quantum meruit.* The court there stated:

> Appellant insists that since the appellee testified that there was a definite contract, and appellee's attorney made the remark: "Yes, sir; we say there was"— meaning a definite contract—the trial court erred in not requiring appellee to elect, after the evidence was in, upon which paragraph of the complaint he would depend for recovery. Whether there was a definite contract was purely a question of fact for the jury. It was entirely within the province of the jury to determine from all the evidence whether a right to recover had been established upon either paragraph. If there was no evidence to warrant a recovery upon the second paragraph the jury could so find,

but appellee was entitled to have the evidence submitted for consideration. There was no error in submitting the evidence, with proper instructions, to the jury.

42 Ind.App. at 272, 85 N.E. at 720. The court further decided there was no error in instructing the jury in the law pertaining to *quantum meruit* in that it could not say there was no evidence to support that complaint.

The trial court in the present case not only instructed the jury on the claims for damages and quasi-contract but also instructed the jury that the counts for breach of contract and quasi-contract were alternative and that Twin Lakes could not recover under both. The jury could decide whether Twin Lakes was entitled to recover under any theory and then was required to decide whether Twin Lakes was entitled to recover upon either a theory of breach of contract or quasi-contract. Likewise, we have concluded the evidence supports either damages or *quantum meruit* recovery for the breach in this case or unjust enrichment recovery in quasi-contract if the jury found there was no contract. Also, as we find no error in instructing the jury on these issues, each could have been submitted to the jury as long as Twin Lakes may recover only once for its damages. *See Foster*, 428 N.E.2d 1351. *See also, Cato Enterprises, Inc. v. Fine* (1971), 149 Ind.App. 163, 271 N.E.2d 146. *Cf. Nehi Beverage*, 537 N.E.2d at 84–86, *opinion on rehearing*, 537 N.E.2d at 86–87.

The City contends that *Model Clothing*, 42 Ind.App. 270, 85 N.E. 719, is distinguishable because that case involved an oral contract and the amount of recovery sought for the breach in damages and in *quantum meruit* were identical. We do not find this contention persuasive. An oral contract is nevertheless an express contract, as is the written contract in this case. Also, the recovery sought in *quantum meruit* or in damages is rarely, if ever, the same. If they were always identical, there would be little need for the different remedies. We do not believe the authority of *Model Clothing* rests upon the identical amounts of damages sought.

Thus, the jury could have concluded from the evidence that a contract did not in fact exist between the parties because a failure of a meeting of the minds. The jury could alternatively have found that the existence of large obstructions, known to the City at all times, did not fall within the terms of the contract even after the execution of the change orders. In either case, Twin Lakes would have been entitled to quasi-contractual relief. *Cf. Dyer Construction Co. v. Ellas Construction Co.* (1972), 153 Ind. App. 304, 287 N.E.2d 262 (whether recovery based upon a contract implied-in-fact or a contract implied-in-law, award of restitution for the reasonable value of services and materials furnished based on sufficient evidence, though trial court had found no meeting of the minds in this case).

This position is further supported by *Kearns v. Burling* (1895), 14 Ind.App. 143, 42 N.E. 646. In that case, the plaintiff contracted with the defendant to drill a well to supply water to the defendant's property. The plaintiff eventually brought suit and claimed that he should be compensated for work and labor provided or that he should be compensated for partial performance under a contract alleged to have been made by the parties. The court found that a directed verdict in favor of the defendant was improper because some evidence existed tending to show that the plaintiff could have furnished an adequate supply of water and that the defendant prevented the plaintiff from complying with the contract; and if the jury so found, the plaintiff would have been entitled to recover if not on the contract at least upon the complaint for work and labor done. As we interpret the case, the jury should have been allowed to decide whether a contract in fact existed and, if so, to award the plaintiff the value of his services in *quantum meruit*. In the alternative, the jury should have been allowed to award the plaintiff the value of the work and labor provided if it found a contract did not in fact exist between the parties. Our decision in the present case is consistent with this analysis.

The City relies upon *Kincaid v. Lazar* (1980), Ind.App., 405 N.E.2d 615, which states that the existence of a valid express contract for services precludes implication of a contract covering the same subject matter, that the rights of the parties are controlled by the contract, and that under such circumstances recovery cannot be had on the theory of *"quantum meruit."* 405 N.E.2d at 619. However, a close reading of that case reveals that the court addressed a situation where the appellant sought recovery outside the contract in quasi-contract when an express contract covered the same subject matter. As we noted above, this is proscribed. Moreover, that case did not involve a breach of contract under which *quantum meruit* was sought to be activated as a breach of contract remedy. In short, the plaintiff in that case sought to obtain a quasi-contract, unjust enrichment remedy in addition to the benefit of the bargain under the contract where each party had fully performed its obligations. Moreover, the plaintiff did not allege that any misrepresentation on the part of the defendant precluded the finding that a contract existed with regard to the meeting of the minds of the parties. That is, the extent of services provided by the plaintiff in that case were known and expected by each party before the contract was formed. We therefore find the present case distinguishable from *Kincaid.*

The City also relies upon *Rebekah Assembly v. Pulse* (1910), 47 Ind.App. 466, 92 N.E. 1045, for several propositions. In that case, the plaintiff contracted to erect a building on land owned by the defendant and to construct a passageway from the newly erected building to a building already in existence. The contract stated that the location of the building would be decided by the defendant's committee but that the additions would be constructed in accordance with certain specifications and plans, which stated the new building would be 97 feet from the old building. Eventually the committee decided to place the new building 203 feet from the old building, which required the plaintiff to construct an additional 106 feet of passageway between them. The plaintiff then brought suit to recover the value of labor performed and material furnished in the construction of the additional passageway.

In its decision, the *Rebekah Assembly* court emphasized the fact that the plaintiff had made no claim to the committee or to the superintendent that the construction of the extra passageway was any alteration from the plans as provided for in the contract which would entitle it to any more compensation than that stated in the contract. The plaintiff did not claim that the parties had agreed in writing beforehand to extra compensation for the extra construction as required by the contract. The court then stated:

> If it were true that appellant so radically changed the plans of the work contracted to be done as that the terms of the written contract did not apply to it, then appellees were under no obligation to proceed with the work at all, and if they did proceed with it, without objection or question, leaving their employer to understand that they were proceeding in the work under the contract, they cannot, after the work is done, assert that the contract shall not determine their rights. If appellees thought they were entitled to extra compensation for constructing the passageway, on account of the fact, as they claim, that the building committee located the new building farther away from the old one than contemplated by the original plans, upon which they made their bid, it was their duty to raise the question before doing the work, and have it settled, as provided by their contract, and have the compensation fixed by agreement beforehand, and made a matter of writing. This was one of the express conditions of the contract between the parties, was a reasonable and just provision, and was intended to guard appellant from claims of the very character appellees now make in this case.

*Rebekah Assembly*, 47 Ind.App. at 470–471, 92 N.E. at 1046. The contract between the City and Twin Lakes contained a similar provision for advance notice of and agreement for work needed beyond that stated in the contract.

The City contends that if Twin Lakes thought that the extra work it performed was covered by the contract, then it was only entitled to the compensation agreed to by the parties, as represented by the contract and the change orders. If Twin Lakes thought the extra work was not covered by the contract, its duty was to have raised the question before doing the work, to have had the matter settled as provided by the contract, and to have had the compensation fixed by written agreement before doing the work. If it were true that the terms of the written contract did not apply to it, then Twin Lakes was under no obligation to proceed with the work at all. If it did proceed with the work, without objection or question, leaving the City to understand that it was proceeding with the work under the contract, it could not, after the work was done, assert that the contract did not determine its rights.

We note, however, that Twin Lakes did not proceed with its work without objection or question. Twin Lakes entered into two written change orders with the City through which it sought additional compensation for the additional work encountered. Twin Lakes proceeded on the assumption there was a valid contract between the parties until it was excluded from the job site. Only then did Twin Lakes learn that the City had known of the large obstructions the entire time and that the City therefore had breached the contract. In contrast, the defendant's committee in *Rebekah Assembly* did not change the location for the new building until after the parties had entered into the contract with full disclosure to the plaintiff. Moreover, the City not only knew of but insisted on the work provided by Twin Lakes at the site even though it knew the project could not be completed as represented to Twin Lakes. In addition, the plaintiff in *Rebekah Assembly* did not allege that the defendant had breached the contract or request *quantum meruit* as a remedy for the breach, nor did it claim the contract did not exist because of a failure of the meeting of the minds. We therefore conclude there are sufficient differences in the facts and contentions in *Rebekah Assembly* to distinguish it from the case before us.

### III.

### Did the trial court erroneously instruct the jury and fail to give a proper instruction?

Initially, we consider Twin Lakes' contention that the City waived these issues when it failed to follow the mandates of Ind. Appellate Rule 8.3(A)(7) with regard to the allegedly erroneous instructions. This contention is well taken; however, the City's minimal compliance with that rule does not substantially hinder our review of the issues. We will therefore address the issues on the merits.

The City first claims the trial court erroneously instructed the jury about modification of the contract by conduct. The trial court gave Twin Lakes' tendered instruction to the effect that the parties to a written contract may modify the terms of the contract either expressly, by a later written agreement, or implicitly, by the conduct of the parties. The trial court also instructed the jury that a contract may be established in whole or in part by the conduct of the parties without any words being expressed in writing or orally, if from such conduct it can fairly be inferred that the parties mutually intended to agree. The City objected to the instructions at trial because they contradicted the terms of the written agreement and they were confusing.

■ A requested instruction is properly given where it correctly states the law, relates to the issues in the case, and is supported by the evidence. *Brook v. St. John's Hickey Memorial Hospital* (1978), 269 Ind. 270, 380 N.E.2d 72; *Shelby Sav. and Loan Ass'n v. Doss* (1982), Ind.App., 431 N.E.2d 493. Parties to a contract may mutually modify their contractual undertakings, and it is not always necessary to prove a written or oral modification of a contract because modification of a contract can be implied from the conduct of the parties. *Skweres v. Diamond Craft Co.* (1987), Ind.App., 512 N.E.2d 217. Even a

contract providing that any modification thereof must be in writing may nevertheless be modified orally. *Id.* However, the modification of a contract, because it is also a contract, requires all of the requisite elements of a contract. *Burras v. Canal Const. & Design Co.* (1984), Ind.App., 470 N.E.2d 1362.

■ One theory advanced by Twin Lakes consisted of a claim that the parties had modified the contract to cover work which it had performed but for which it had not been compensated. At trial, Twin Lakes claimed the failure of the City to fully pay it for the work contemplated in the contract constituted a breach of contract. The evidence on this point reveals that the two written change orders covered work completed by December 31, 1986, but Twin Lakes and the City continued to work together on the project at the site until the City excluded Twin Lakes from the site in April of 1987. During this time, the parties unsuccessfully attempted to reduce the obligations of each to writing. However, the City also lowered the water level in the reservoir to allow Twin Lakes to construct dams there so that Twin Lakes would have better access to the dredge site.

We conclude this evidence supports the theory that the parties implicitly modified their contract. The original contract did not contemplate the construction of dams and the lowering of the water level; in fact, the original contract stated that the water level would not be lowered. Nevertheless, each party took steps to facilitate access to the job site with full knowledge of the conduct of the other on subject matter not theretofore contemplated by any writing, and the jury was entitled to find a legally implied promise on the part of the City to render back to Twin Lakes the value of the benefit of continued dredging bestowed on the City during that time.

■ Moreover, with regard to the term in the original contract which prohibited unwritten modifications, the parties essentially modified that provision with their subsequent conduct. Further, the City's objection that the instructions were confusing is not a specific objection and presents

no question on appeal. *Hershberger v. Brooker* (1981), Ind.App., 421 N.E.2d 672. The trial court committed no error when it submitted these instructions to the jury.

■ The City next claims the trial court erroneously gave the following instruction to the jury:

> Where one party to a contract wrongfully prevents complete performance of the contract by the other party, such other party is excused from the remainder of his duties under the contract, and he may recover for the work that he had performed and any damages that he has sustained as a direct result of the prevention of performance.

The City objected to this instruction because it did not apply to the facts of the case and it was confusing. As already noted, the objection that the instruction is confusing is not specific and presents no question on appeal. *Hershberger*, 421 N.E.2d 672.

At trial, Twin Lakes prosecuted the theory that the City had breached the contract when it had flooded the dredge site. The City had lowered the water level in the reservoir to allow Twin Lakes to build dams to permit easier access to the site. As noted above, the jury could have considered this conduct a modification of the contract by conduct. Thereafter, as Twin Lakes continued to work toward the completion of the contract, the City allowed the water level in the reservoir to rise in anticipation of the start of the Pan Am Games, which effectively destroyed the easier access. We conclude the trial court properly gave the instruction because it relates to the issues in the case and is supported by the evidence. *Brook, supra,* 269 Ind. 270, 380 N.E.2d 72. The jury could properly have concluded from the evidence that the City wrongfully prevented complete performance of the contract, as modified, by Twin Lakes, thus entitling Twin Lakes to *quantum meruit* relief for breach of contract. The jury could also have concluded such actions prevented Twin Lakes from completing the work before it was terminated from the project, in which case it was entitled to damages. While this instruction

might appear to allow recovery both for work performed and for damages, the City did not allege this as error. Moreover, the trial court specifically instructed the jury that recovery could be had on only one of the theories advanced. Any error therefore is waived or is harmless.

 The City also claims the trial court erroneously gave the jury a modified instruction, tendered by Twin Lakes, to the effect that no particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is within the scope of the evidence and that uncertainty of the amount does not prevent the award of damages. The City objected to this instruction as an incorrect statement of the law and because it invited guess and speculation on the part of the jury.

While there must be some evidence upon which an award for damages can be made, uncertainty of dollar amount does not prevent the award of damages. *Ind. & Mich. Elec. v. Terre Haute Indus.* (1987), Ind. App., 507 N.E.2d 588, *trans. denied by* 525 N.E.2d 1247. When we determine whether an instruction is erroneous, we view the instructions as a whole, with all other instructions, to ascertain whether the complaining party was actually prejudiced. *Merriman v. Kraft* (1969), 253 Ind. 58, 249 N.E.2d 485.

While the allegedly erroneous instruction does not address speculation or uncertainty, another instruction the trial court gave to the jury specifically states that the jury is not permitted to guess or speculate but must determine the issues from the credible evidence in the case and from the law given by the court. We conclude the City was not prejudiced by the allegedly erroneous instruction.

 Finally, the City claims the trial court improperly failed to give its tendered instruction, as follows:

> You are instructed that the Plaintiff's allegations of Fraud against the City of Indianapolis are no longer a part of this case.

The City claims the failure to give this instruction constitutes reversible error because it satisfies the test we use to resolve such issues. Specifically, the City contends the instruction is a correct statement of the law, is applicable to the facts of the case, and is not adequately covered by other instructions given. *Lutz v. DeMars*, (1990), Ind.App., 559 N.E.2d 1194, *trans. denied.*

The record reveals that Twin Lakes eventually moved to dismiss its various fraud and constructive fraud counts, and the trial court granted the motion. However, Twin Lakes consistently maintained its action for breach of contract due to fraud and misrepresentation on the part of the City. These contentions directly affected the issues of the assent of the parties and breach of contract even though the tort counts had been dismissed. We therefore conclude the instruction tendered by the city was inapplicable to the facts of the case and the trial court properly refused it.

### IV.

**Did the trial court improperly award Twin Lakes prejudgment interest?**

Twin Lakes proceeded on the alternative theories of breach of contract and quasi-contract. We have already concluded the trial court committed no error when it allowed Twin Lakes to do so. The contract, as modified, stated Twin Lakes was to receive $256,782.00, of which about half had been paid to Twin Lakes as it performed the work. On these alternative theories, Twin Lakes claimed it was due a sum from the amount not yet paid under the contract to $1,250,000.000 in damages. Twin Lakes used more than three different methods to calculate its damages and obtained a different result from each. In addition, Twin Lakes successfully sought to have the jury instructed that no particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is within the scope of the evidence and that uncertainty of the amount does not prevent the award of damages.

The jury returned to the trial court with a verdict for Twin Lakes in the amount of $550,000.00. The trial court had previously

decided to determine the issue of prejudgment interest for itself rather than to have it decided by the jury. After the jury returned its verdict, the trial court held a hearing to determine the applicability of prejudgment interest to the verdict. The court then awarded $66,974.25 to Twin Lakes in prejudgment interest and deducted from the verdict a set-off of $35,000.00, the amount paid in settlement by another defendant previously released from the lawsuit, for a total award of $581,974.25.

We first note that Twin Lakes received an award greater than the amount due under the contract and that its action in quasi-contract could not lie unless the City had been wrongfully enriched at its expense. *Dyer Construction Co.*, 153 Ind. App. 304, 287 N.E.2d 262. The evidence most favorable to Twin Lakes supports the conclusion that the City was unjustly enriched at the expense of Twin Lakes. From the evidence presented, the jury could have concluded that the City has sought to restrict Twin Lakes' recovery to the amount equal to or less than that stated in the contract while at the same time it unjustly accepted and retained the benefit of the additional work provided by Twin Lakes outside the contract. *See Cato Enterprises*, 149 Ind.App. 163, 271 N.E.2d 146.

Prejudgment interest is proper when the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued. *Indiana Industries, Inc. v. Wedge Products*, (1982), Ind. App., 430 N.E.2d 419. The "ascertainable" standard is in reference to the amount of damages, as distinguished from the liability for those damages. The trier of fact need always exercise its judgment to determine the liability for damages; but, prejudgment interest is proper where the trier of fact need not exercise its judgment to assess the amount of damages. *Id.*

Twin Lakes claims damages were ascertainable because one of its theories of recovery requested an amount close to that eventually awarded by the jury. However, this claim ignores the wide disparity in the alternative amounts requested by Twin Lakes at trial and does not show that the damages were ascertainable without resort to trial although, in hindsight, a calculation could possibly be gleaned from the record. We conclude that the facts of this case do not adequately support an award of prejudgment interest on Twin Lakes' damages. *See City of Anderson v. Salling Concrete Corp.* (1980), Ind.App., 411 N.E.2d 728. The judgment must be reduced accordingly.

This case is remanded for the sole purpose of decreasing the entry of judgment by the amount of prejudgment interest awarded, $66,974.25, to the sum of $515,-000.00. The trial court is affirmed in all other respects.

BAKER and STATON, JJ., concur.