Michael P. BOZZELLI d/b/a Culver
Cove Realty, Appellant–
Defendant,

v.

Wayne L. HOLLENBAUGH
d/b/a Wayne's Realty,
Appellee–Plaintiff.

No. 50A05–9106–CV–172.

Court of Appeals of Indiana,
Fifth District.

Dec. 18, 1991.

Richard F. Joyce, Kizer & Neu, Plymouth, for appellant-defendant.

T. Edward Ummel, Easterday & Ummel, Plymouth, for appellee-plaintiff.

BARTEAU, Judge.

Two real estate brokers earned a commission, then disagreed over its division. The court below divided it $^{83}/_{17}$ (decimals rounded), concluding that 17% of the commission represented the value of the one broker's services. We reverse.

### FACTS AND DECISION BELOW

The dispute ensued from the sale of a residence in Marshall County. Appellee Wayne Hollenbaugh had an exclusive listing to sell, which included the seller's promise to pay Hollenbaugh a commission of 6% of the sale price. Appellant Michael Bozzelli procured the buyer and arranged financing. The two did not know each other, and operated through separate offices.

At closing, the seller paid, as agreed, 6% of the $280,000 sale price—$16,800. Upon Hollenbaugh and Bozzelli disputing division

of the commission, the title company preserved the sale by taking the seller's money and then issuing a check on its account, naming as payees both brokers. Hollenbaugh then brought an action for judicial determination of the proper split.

In a trial to the bench, both Bozzelli and Hollenbaugh testified to one conversation in which they discussed division of the commission. Bozzelli testified he and Hollenbaugh had orally agreed on a $^{50}\!/_{50}$ split (*i.e.*, each to receive 3% of the sale price). Hollenbaugh testified that he originally agreed to pay Bozzelli 1.6% of the sale price, by having told Bozzelli during the conversation that the split would conform to the figure set out in the listing of the property in the multiple listing service published by the Marshall County Board of Realtors ("MCBR"). The figure—the so-called "co-op commission," representing the amount the listing broker agreed to pay to a selling broker—was 1.6%. Hollenbaugh further testified that during the conversation, and throughout the negotiations between the buyer and seller, he believed Bozzelli was a member of the MCBR, and that when he learned Bozzelli was not a MCBR member, he decided that Bozzelli was entitled to nothing.

The trial court awarded Bozzelli $2800 (*i.e.*, 1% of the sale price). The trial court's order includes the following pertinent findings and its conclusions:

5. [Bozzelli and Hollenbaugh] had discussed the division of the broker's commission but did not arrive at an agreement as to an amount or percentage.

. . . .

10. [Hollenbaugh] had expended, in addition to normal advertising expenses, in excess of [$1400] in advertising the [subject] property in [Chicago, Indianapolis, and South Bend] newspapers.

. . . .

14. [Bozzelli] is not entitled to the co-op percentage as a nonmember of the Marshall County Board of Realtors Multiple Listing System.

15. [Bozzelli] is entitled to a reasonable fee for the work which he performed with regards to the [sale] and in assisting in obtaining financing. An equitable fee would be [$2800].

. . . .

Record at 38–41. Bozzelli appeals. He characterizes the decision below as a mistake of law, because the trial court decided the case on a *quantum meruit* basis, rather than holding that where real estate brokers agree to split a commission but fail to agree on respective percentages, an even split is proper.[1]

## DISCUSSION

■ We begin with the question whether Hollenbaugh and Bozzelli agreed to divide the commission.[2] The trial court made no express ruling on this point, but rather wrote in finding # 5 that "[t]he parties had discussed the division of the broker's commission but did not arrive at an agreement as to an amount or percentage."

Hollenbaugh interprets this finding to mean that the parties did not even agree to divide the commission, and argues in the brief that Bozzelli was working not for an agreed-upon percentage of the commission, but for a "finder's fee." In our view, the

1. *Quantum meruit* is a legal fiction, "a breach of contract remedy available to an innocent party to recover the value of services performed under the contract." *City of Indianapolis v. Twin Lakes Enter., Inc.* (1991), Ind.App., 568 N.E.2d 1073, 1078, *reh'g denied, trans. pending.* It "seeks to provide the injured party with the fair value of work and services rendered and thus prevent the unjust enrichment of another." *Id.* A similar doctrine, known variously as quasi-contract, contract implied-in-law, or constructive contract shares the same purpose as *quantum meruit* but differs in that it refers "to the situation in which obligations are imposed by law, without regard to the assent of the parties

bound, to permit a contractual remedy where no contract exists in fact but where justice nevertheless warrants a recovery under the circumstance as though there had been a promise." *Id.*

2. We use the verb "divide" to denote "separate into two, not necessarily equal parts." *But see Graves v. White* (1908), 43 Colo. 131, 133, 95 P. 347, 348 ("[T]he word 'divide,' unqualified by other words, when used by and between two contracting parties, limits the severance or partition to two equal parts.").

question whether the parties agreed to divide the commission must be answered either yes or no. Considering that both parties testified they had so agreed, a finding that they had not would be clearly erroneous, as unsupported by any evidence. Moreover, to hold there was no contract to divide the commission would be contrary to common understanding of the professional practices of real estate brokers, as expressed thusly:

> [T]he purpose of placing property in the multiple listing service is so that other brokers will know the property is on the market and that they can and will show the property and sell it. It would be unrealistic to conclude ... that the selling brokerage would be willing to spend its time and effort without the expectation of being compensated. As such, a broker or agent who places property in a multiple listing service must expect to divide the commission with the agent who is the procuring cause of a sale.

*Pine Tree Realty v. Stan Weber & Assoc., Inc.* (1981), La.App., 405 So.2d 1379, 1381. Therefore, in the interest of judicial economy, we must construe finding # 5 to mean that the parties agreed to divide the commission, but did not agree on the exact terms of the division.[3]

■ We turn now to the central issue— when two licensed real estate brokers agree to divide a commission, but reach no agreement on the percentages, and, having earned the commission, fail to come to terms on its division and accordingly resort to lawsuit, how should the courts resolve the dispute? We perceive this question to be one purely of law. And, it is a question of first impression in Indiana. Therefore, we need not follow the ordinary presumptions in favor of trial court judgments, because "[w]e are in as good a position as the trial judge in applying the facts to our determination of the [question of law]." *Citizens Gas & Coke Util. v. American Economy Ins. Co.* (1985), Ind., 486 N.E.2d 998, 999 (case tried on stipulated facts). *See also* K. Stroud, 4A *Indiana Practice*

§ 12.3 (2d. ed. 1990) ("Appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law.... [because] [a]ppellate courts are *at least as* competent, if not *more* competent, than trial courts in deciding such issues....") (emphasis in original). However, the burden of persuasion remains with the appellant.

■ Bozzelli directs us to an annotation entitled "Construction of Agreement Between Real–Estate Agents to Share Commissions," which includes, under the subheading "Rate or Amount Recoverable," a section discussing "Generally; failure to designate rate or amount." The law stated therein is as follows:

> Where brokers' agreements to divide compensation failed to adequately state a method to compute the respective shares, the cases, depending on the circumstances presented, have variously held (1) that an equal division was contemplated; (2) that the court could look to custom to supply the essential term; (3) that the jury could award any amount it saw fit; and (4) that the broker who procured a purchaser was entitled to the reasonable value of his services.

71 A.L.R.3d 586, § 17 at 617–18 (1976) (footnotes omitted).

Bozzelli cites to another A.L.R. annotation to draw an analogy between the case at bar and the situation of cooperating lawyers who fail to agree on the division of a legal fee, a situation in which there exists a general rule of equal division:

> The rule is quite generally accepted that attorneys cooperating in the conduct of legal matters, with no agreement as to how their fees or compensation shall be divided between them, are entitled to share equally in the fees received, in the absence of particular circumstances affecting the situation.

---

**3.** Hollenbaugh argues in the brief that an agreement to divide the commission would be void, or voidable, due to misrepresentation by Bozzelli of his membership status in the MCBR. The

argument raises no issue for us, because the trial judge made no finding of fact regarding any such misrepresentation.

Annotation, *Division of fees or compensation between co-operating attorneys*, 73 A.L.R.2d 991, 993 (1960).

The foregoing $^{50}/_{50}$ rule for legal fees echoes in the Indiana Legal Encyclopedia, which states the idea "each of the attorneys who jointly undertake to render legal services is entitled, in the absence of any agreement or custom to the contrary, to share equally in the compensation." 3 I.L.E. Attorney and Client § 99, at 479. The A.L.R. annotation also notes a position inimical to Bozzelli, that "the circumstances may be such that the fees to co-operating attorneys should be apportioned on a quantum meruit basis." 73 A.L.R.2d at 992 (footnote omitted).[4]

Turning back to the brokers' cases cited in the first-quoted A.L.R. annotation, we discern a majority rule of equal division. *See Christensen v. Redman* (1954), 243 Minn. 130, 137, 66 N.W.2d 790, 795 ("[T]he better rule applicable to real estate brokers is that, in the absence of a contrary stipulation, an agreement for a division of compensation is deemed to contemplate an equal division."); *Ferguson v. Conklin* (1932), Tex.Civ.App., 51 S.W.2d 622, 624, *reh'g denied* ("It is held that: 'An agreement that profits are to be divided means, in the absence of a contrary stipulation, that they are to be equally divided.' "); *Graves v. White* (1908), 43 Colo. 131, 95 P. 347.

The annotation places *Graves v. White* in subpart (3) "any amount [the jury] saw fit." However, *Graves*, which factually resembles the case at bar, fits better into subpart (1) "equal division." The plaintiff in *Graves* alleged the defendants had prom-

ised to split equally the $622 commission. The defendants denied making any contract with the plaintiff, and thought the plaintiff had not played a part in completing the sale, although one of the defendants testified "he intended to do what was right with [plaintiff]." 95 P. at 348. The jury awarded plaintiff $174. The defendants appealed, conceding for the sake of argument that one of them had told the plaintiff he would divide the commission. However, continued the defendants, "[a] promise to divide the commission did not necessarily mean to give him half of it. It is so indefinite that no one can tell just what the statement does mean." *Id.* The supreme court of Colorado disagreed, writing "by common usage the common acceptation and definition of the word 'divide,' unqualified by other words, when used by and between two contracting parties, limits the severance or partition to two equal parts." *Id.* As to how $622 could yield after equal division $174, the court explained "the jury may have deducted from the commission paid the amount of expenses incurred by appellants in making the sale, as shown by the evidence introduced, and divided what remained." *Id.*

The three cases cited above give no reasoning to support their holdings. The 1954 Minnesota case merely stated the rule, citing the 1932 Texas case, which itself provided no reasoning, but rather cited the 1908 Colorado case, which in turn asserted the rule, unsupported by precedent. Despite this lack of guidance in the cases, we conclude the better rule is that of equal division.

**4.** Both the A.L.R. and the I.L.E. cite the same two Indiana cases, neither of which sheds much light on this case. In *Romine v. Frank* (1954), 124 Ind.App. 465, 118 N.E.2d 900 the court noted the general rule of equal division but held it inapplicable. Unlike the case at bar, the facts in *Romine* did not include a fund paid by a third party and to be shared between the parties to the suit. In *Komisarow v. Lansky* (1966), 139 Ind.App. 351, 219 N.E.2d 913 "both parties were practicing lawyers and [Lansky] was asked to handle one certain case for a definite fee." 219 N.E.2d at 916. Upon receiving the $3500 fee, Komisarow did not pay Lansky, who then sued for $1750; the trial court awarded him some

$2428. On appeal, the court stated "such contracts must be construed in accordance with the probable intention of the parties." *Id.* That statement provides little guidance here, because the trial court was unable to discern the parties' probable intention as to dividing the fee, and given the factual nature of the question, we are disinclined to venture our opinion on it. It is unclear how the equal division rule for legal fees comports with the fee-splitting provisions of Ind.Professional Conduct Rule 1.5(e). Because this discussion of dividing legal fees is merely by analogy to the situation of real estate brokers' fees, we will not delve further into the question.

That the cases touching on this question are few and far between suggests the principles of real estate practice generally succeed in precluding disagreements over the division of commissions. It by no means overstates the case to say that such an estimable state of affairs merits no disruption. In our view, resolving this case on the *pro rata* basis employed by the trial judge would increase litigation over dividing realtors' commissions, and is therefore an inferior theory to one that tends the other way, as does the $^{50}/_{50}$ rule.

In cases where the brokers agreed to share equally the commission, but one ended up doing most of the work, a *pro rata* rule could incite that one to dishonor the agreement, thereby engendering a lawsuit. *See, e.g., Dean Vincent, Inc. v. Russell's Realty, Inc.* (1974), 268 Ore. 456, 521 P.2d 334 (parties initially agreed on $^{50}/_{50}$ split; one did bulk of work and refused to pay; trial court awarded plaintiff *pro rata* 25%; appellate court reversed in favor of equal split). Similarly, in cases where one broker agreed to accept less than half of the commission, say 20%, but eventually did all the work, the same incentive would arise. It seems not at all unreasonable to suppose the 20% broker might venture a lawsuit, in hopes a trial judge would find there had been no agreement on the proportions, and then award the plaintiff more than the 20% actually agreed upon. In *Dean Vincent*-type situations, an equal division rule would obviate the impulse to litigate. In the 20% scenario, an equal division rule would spur the broker seeking 80% to reduce the agreement to writing, thus greatly reducing the 20% broker's willingness to venture a lawsuit. If the $^{50}/_{50}$ approach had already been part of Indiana law, it seems unlikely that this case would have arisen—the parties would have either agreed on $^{50}/_{50}$, or Hollenbaugh would have, or should have, acted to protect his allegedly superior share.

It may be that in some areas brokers by local custom divide their commissions $^{50}/_{50}$. In such places, the $^{50}/_{50}$ rule we now adopt will have no impact. However, the $^{50}/_{50}$ rule in some circumstances will place a burden on brokers who wish to keep a superior share of a commission. The rule requires a broker who wishes to earn more than half of a commission to lock up the terms with the other broker before proceeding. That duty can be accomplished by brokers' contractual relations with their local boards, that is, the members of the local group agree one among another to divide commissions according to the published co-op figure. The $^{50}/_{50}$ rule will not change those pre-existing relationships, and as long as a listing broker member knows the selling broker to be a member, the $^{50}/_{50}$ rule will not affect them. But, in cases where the listing broker is uncertain whether the selling broker belongs to the local board, or if neither has entered the local board's contract, the $^{50}/_{50}$ rule requires the listing broker to act to protect the desired superior share, either by determining membership, or by reducing the commission agreement to writing. Considering that in the ordinary sale of residential real estate, the essence of the agreement between two brokers is the division of a fund paid by a third party, we think it not unwarranted for the law to require them to be certain of their agreements. Moreover, we see no excessive burden imposed by such a requirement, because we believe the parties to a simple contract are not unduly burdened by being required to ascertain the contract's crucial term.

We dislike the *pro rata* theory for a second reason—its resistance to mathematical determination, which leads in our opinion to arbitrary results. In the record before us, there is little, and in the trial judge's findings, nothing, to make the award reasonably ascertainable, such as evidence of the amount of time expended, an hourly rate, or the other overhead costs of maintaining a real estate sales practice. Even if there were such evidence, we understand the real estate broker's occupation to not lend itself to a wage-based evaluation of services, in that the sale of an expensive property, paying a rich commission, might be accomplished quickly where the selling broker's client is cash-rich and motivated to buy, whereas a lower-priced property yielding a lesser commission

**910**

might require showings to multiple prospective purchasers, and protracted efforts to assist the buyer's search for financing. That the parties in this case expressed the value of their services in terms of earning commissions, not wages, underscores our concept of their profession. Thus, there is no articulable basis on which to ascertain the value ascribed to Bozzelli's service. Indeed, the trial judge did not in any way explain what calculus yielded a figure of $2800. Nor did the trial judge explain how it was determined that Bozzelli did 17% of the work and was therefore fairly entitled to 17% of the commission.

Of course, the unavailability of a mathematical formula to ascertain a fair division of the commission is not a *per se* reason to reject the approach adopted below, because of our rule that no particular degree of mathematical certainty is required in awarding damages provided the award is within the scope of the evidence and is not based on mere conjecture, speculation, or guesswork. *Whiteco Properties v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, *reh'g denied, trans. denied.* However, the poor fit between the real estate broker's work and a *pro rata* system of evaluating it, combined with the inferiority of the *pro rata* theory vis-a-vis a $^{50}/_{50}$ rule and the goal of forestalling litigation by reducing uncertainty in brokers' agreements, convinces us to prefer the rule of equal division.

 As a final matter, we see no reason why an equal division rule precludes consideration of a party's out-of-the-ordinary expenses. *See Graves v. White, supra.* Therefore, Hollenbaugh's extraordinary advertising expenses of $1400, as outlined in finding #10, should be deducted from the total commission prior to the $^{50}/_{50}$ division.

The trial court is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

CONOVER and RUCKER, JJ., concur.