**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL L. MUENICH**
Highland, Indiana

ATTORNEY FOR APPELLEE:

**T. EDWARD PAGE**
Thiros and Stracci, P.C.
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY COLBY & HOLLY COLBY, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1110-PL-472 |
| | ) | |
| T.H. CONSTRUCTION, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Jeffery J. Dywan, Judge
Cause No. 45D11-0905-PL-60

**March 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Timothy Colby and Holly Colby appeal various orders and the entry of judgment against them on their complaint for breach of contract and deception filed against T.H. Construction, Inc. ("T.H."). We affirm.

**Issues**

The Colbys raise six issues, which we consolidate and restate as:

    I.    whether the trial court properly permitted T.H. to withdraw admissions;

    II.    whether the trial court properly denied their motion for partial summary judgment; and

    III.    whether the trial court's findings support its conclusions that the Colbys were not entitled to recover on their breach of contract claim.

**Facts**

Terry Hovanec is the sole proprietor of T.H. In 2007, Hovanec met with the Colbys regarding the construction of a new dental office in Highland. In April 2007, the Colbys entered into an agreement with T.H. to develop the plan, design, and specifications for the dental office building. In September 2007, the Colbys entered into a detailed construction contract, which T.H. had drafted, that called for the project to be completed for $683,916. The contract listed the price of forty-one project details and "specs," including $20,000 for contingencies. App. p. 80. It also provided:

Payment

Payment will consist of draws during the project construction period. The size of the project and total dollar amount will dictate if draws will be every 30 (thirty) days

2

apart or consist of a defined amount of draws over the period of construction. A sworn statement document will be used to detail payment schedule. Original amount of contract, items to be paid, items previously paid, and balance to complete will be clearly itemized. Each progress payment will have a partial waiver of lien for the requested amount. On completion all final waivers will be submitted. No occupancy will be allowed until final payment is satisfied to T.H. Construction Inc. . . .

## Liens

T.H. Construction Inc. reserves all lien rights for its and all third party affiliation. In the event of non-payment T.H. Construction Inc. reserves the right to charge a fair market interest rate for carrying charges. . . . This notice is informing the parties accepting this contract that T.H. Const. Inc. is reserving the lien rights of any and all suppliers and sub-contractors supplied or hired by T.H. Construction Inc. for (60) sixty days from last executed work and or delivery, through completion of said project. Signature of acceptance makes this document a fully binding contract, resulting in owners responsibility of all collection and attorney fees if should [sic] they occur.

Id. at 86 (capitalization modified). The contract further provided:

## Allowance

When a line item has a allowance heading, a dollar amount has been set as a general area the customer has specified for budget. A allowance allows the customer the ability to shop at suppliers of their choice. This also requires the customer to have all of these items selected and ordered in a timely manor [sic] to avoid any delays. A cost overrun of a allowance amount will be the customers obligation to pay the extra charge. Any amounts under a listed cost will be a credit to the customer.

* * * * *

## Change Orders

3

> Any change orders during construction will be in writeing [sic] and signed by both customer and T.H. Construction Inc. before execution. The order will be a description of work with a itemized list of materials and labor. All change orders will be satisfied in a thirty day period, from time of completion of such order.

Id. at 88 (capitalization modified).

Throughout construction various changes were discussed and agreed on by the parties, including a $24,757 addition to the parking lot, which the Colbys requested and which required the Colbys to increase the construction loan in that amount. Notwithstanding the various changes, written change orders were not executed pursuant to the terms of the contract.

In August 2008, after a seventh draw was made on the construction loan but before the final payment was made and the loan was closed, T.H. permitted the Colbys to occupy the building. Within a week of occupancy, Timothy contacted Hovanec with concerns about low water pressure. Hovanec and the Colbys disagreed as to the cause of the problem and the resolution. Eventually, Hovanec agreed to replace the water main at no charge. Timothy declined Hovanec's offer and, instead, had someone else replace the main.

On October 24, 2008, Hovanec filed mechanic's liens for the amounts still owed by the Colbys. Hovanec then provided the Colbys' lender with a final sworn construction statement and detailed change orders describing the changes made during construction. When the lender presented these documents to the Colbys, they informed their bank that they needed to discuss the matter further. In December 2008, the Colbys expressed an

4

intention not to pay Hovanec, and the bank suggested placing the money in escrow with the title company so that the subcontractors could get paid. In January 2009, the bank informed the Colbys by letter that financing had already been extended once to give them an opportunity to resolve their differences with T.H. and that the bank was growing impatient. On March 20, 2009, the Colbys closed on the loan, all liens were released, T.H. and the subcontractors were paid in full, and no money was escrowed.

On May 28, 2009, the Colbys filed a complaint against T.H. alleging breach of contract and deception. The Colbys claimed that T.H. charged more than the stated contract price, failed to deliver goods and services specified under the contract, and forced them to pay the overages as a condition of releasing improper liens. The Colbys claimed damages of at least $60,000 for the breach of contract and requested treble damages and attorney fees based on their deception claim.

Before T.H. answered, an issue arose regarding arbitration. In a September 2, 2009 order, the trial court denied a request to compel mediation or arbitration and granted T.H. twenty-one days to file an answer. That same day, the Colbys sent T.H. a request for admissions. The deadline to answer the request for admissions was October 5, 2009.

On October 23, 2009, T.H.'s counsel discovered that the request for admissions and the September 2, 2009 order had been inadvertently placed in T.H.'s file without calendaring. T.H.'s counsel met with Hovanec the following day, a Saturday, drafted an answer to the complaint and answers to the request for admissions, and sent the documents by fax and mail to the Colbys' attorney. T.H. filed the answer with the trial court on October 26, 2009. On October 28, 2009, T.H. filed a verified motion to

5

withdraw and amend admissions explaining these circumstances along with T.H.'s answers to the request for admissions. On November 4, 2009, the Colbys filed a response in opposition to T.H.'s motion to withdraw and amend admissions, and T.H. replied.

On March 10, 2010, while the issue of the admissions was still pending, the Colbys filed a motion for partial summary judgment arguing that they were entitled to summary judgment on their breach of contract claim because there were no written change orders and because of the low water pressure. On March 30, 2010, following a hearing, the trial court granted T.H.'s motion to withdraw admissions. On April 30, 2010, T.H. filed a response to the Colbys' motion for partial summary judgment. On May 18, 2010, the Colbys filed a reply and a motion to strike allegedly improper summary judgment designations. On June 1, 2010, the trial court held a hearing on the Colbys' motion for partial summary judgment. On July 29, 2010, the trial court issued an order setting out the undisputed facts, concluding that the Colbys were entitled to $7,200 in damages for the water pressure issue and denying the Colbys' motion for partial summary judgment regarding the change orders because there were factual disputes regarding whether the Colbys verbally authorized the changes to the work and the amount, if any, due pursuant to the change orders.

On August 30, 2010, T.H. filed a motion to reconsider the ruling on the water pressure issue. On October 19, 2010, the trial court granted the motion to reconsider and concluded there were questions of fact regarding the water pressure issue. On September 19, 2011, after a multi-day bench trial, the trial court issued extensive findings and conclusions in a forty-page order. The trial court concluded that T.H. did not breach the

6

contract or commit deception and that "with the exception of the $883.36 credit owed by T.H. to the Colbys for funds left over from design and development, the court finds against the plaintiffs and for the defendant." Id. at 563. The Colbys now appeal.[1]

**Analysis**

*I. Admissions*

The Colbys contend that the trial court improperly permitted T.H. to withdraw and amend its admissions. Pursuant to Indiana Trial Rule 36(A), a party may serve upon any other party a written request for the admission of the truth of any matters within the scope of Indiana Trial Rule 26(B), which governs the scope of discovery. "The matter is admitted unless, within a period designated in the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." Ind. Trial Rule 36(A).

Indiana Trial Rule 36(B) provides:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.

---

[1] The Colbys did not provide transcripts of any of the hearings or the trial as part of the record on appeal.

7

Thus, "matters admitted are deemed 'conclusively established' unless the trial court permits withdrawal or amendment of the admission." General Motors Corp., Chevrolet Motor Div. v. Aetna Cas. & Sur. Co., 573 N.E.2d 885, 888-89 (Ind. 1991).

Our supreme court has observed that the rule authorizing withdrawal or amendment is intended to avoid the binding effect of inadvertent admissions and that an admission should ordinarily be binding unless the admission is no longer true because of changed circumstances or a party has made an improvident admission through an honest error. Id. at 889. Further, the court recognized that, unless the party securing an admission can depend on its binding effect, he or she cannot safely avoid the expense of preparing to prove the matter admitted and the purpose of the rule is defeated. Id.

In determining whether a trial court may grant a party's request to withdraw an admission, our supreme court explained:

> Thus the rule itself limits the discretion of a trial court in ruling on a motion to withdraw admissions under T.R. 36(B). The court cannot grant such motion unless it determines both (1) that withdrawal or amendment will subserve the presentation of the merits and (2) that prejudice in maintaining the action or defense will not result to the party obtaining the admission. Even if both of these conditions are satisfied, the rule does not compel the trial court to grant withdrawal or amendment. Rather, the rule states that the court "may" then grant such request.

Id.

We have stated that the party seeking withdrawal has the burden of demonstrating that the presentation on the merits will be subserved by the withdrawal and the party who has obtained the admissions has the burden of demonstrating prejudice if the trial court

8

permits the withdrawal. <u>Corby v. Swank</u>, 670 N.E.2d 1322, 1326 (Ind. Ct. App. 1996). In this context, prejudice does not mean the loss of the benefit of the admission; rather, it means that the party has suffered a detriment in the preparation of the case. <u>Id.</u>

In their opening brief, the Colbys assert that T.H. failed to meet its burden of showing that the withdrawal of the admissions would subserve the presentation on the merits because the motion failed to identify the admitted matters or explain how it planned to contest those issues. In response, T.H. argues that the Colbys' failure to provide us with a transcript of the hearing on this issue results in waiver of the issue. In their reply brief, the Colbys frame the issue as whether "[t]he trial court failed to acknowledge or apply applicable standards to set aside admission and thus committed error of law." Appellants' Reply Br. p. 5.

To the extent the Colbys' argument that T.H. did not demonstrate that the presentation on the merits will be subserved by the withdrawal is not waived, in its reply in support of its motion to withdraw and amend admissions, T.H. set forth seven specific allegations that were at issue in the case. T.H. also asserted that, if it was not permitted to withdraw its admissions, "this case would not be decided on its merits and justice would not be done." App. p. 187. Based on the record before us, the Colbys have not established that T.H. failed to meet its burden.

Regarding the Colbys' assertion that the trial court failed to acknowledge the applicable standards, they cite to no authority requiring a trial court to acknowledge the applicable standard or to issue findings when granting a motion to withdraw admissions. Accordingly, this allegation of error is waived. <u>See</u> Ind. Appellate Rule 46(A)(8).

9

As for the Colbys' claim that the trial court applied an incorrect standard when it granted T.H.'s motion to withdraw admissions, "We presume that the trial court applied the law correctly and the burden is on the appellant to show reversible error." Babinchak v. Town of Chesterton, 598 N.E.2d 1099, 1102 (Ind. Ct. App. 1992). T.H.'s motion to withdraw admissions, the Colbys' response, and T.H.'s reply all contained a discussion of Indiana Trial Rule 36 and the applicable legal standard for withdrawing admissions. The issue was extensively briefed by the parties and an order was issued after a hearing was conducted. Without more, the Colbys have not established that the trial court committed an error of law when it granted T.H.'s motion to withdraw admissions.

## II. Summary Judgment

### A. Motion to Strike

On May 18, 2010, the Colbys filed a motion to strike portions of the evidence designated by T.H. in its response to the Colbys' motion for partial summary judgment. The Colbys claimed that portions of the designated affidavits contained inadmissible hearsay or were not property verified or authenticated. They also claimed that T.H.'s designation of evidence did not specifically identify the relevant portions of the documents upon which it relied. It does not appear that the trial court issued a written order expressly addressing this issue.

On appeal, the Colbys argue that the trial court erred in refusing to strike T.H.'s designated evidence. T.H. asserts that the Colbys' failure to include a transcript of the summary judgment hearing "makes it difficult if not impossible for the appellate court to decide without guessing exactly what took place at that hearing" and that by failing to

10

provide us with a transcript, "the Colbys invite the appellate court to rule on the objections raised in their motion to strike without regard to any evidentiary rulings the trial court may have made at the hearing." Appellee's Br. p. 16. T.H. contends that the Colbys' failure to provide us with a transcript of the hearing waives any specification of error that depends on a review of the trial court's rulings at that hearing.

"It is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the trial court's judgment." Marion-Adams School Corp. v. Boone, 840 N.E.2d 462, 468 (Ind. Ct. App. 2006). "The party claiming the error has the burden to establish a complete and accurate record." Smith v. Convenience Store Distributing Co., 583 N.E.2d 735, 739 (Ind. 1992). Without a transcript of the hearing, we are unable to review what, if any, arguments and rulings were made on this issue. Thus, based on the limited record before us, the Colbys have not met their burden of showing reversible error on this issue.

### B. Motion to Reconsider

On August 30, 2010, T.H. asked the trial court to reconsider the summary judgment order on the water pressure issue. That portion of the summary judgment order provided:

> Shortly after occupying the building, the Colbys informed T.H. Construction, Inc. of insufficient water pressure. The insufficient pressure resulted because T.H. Construction, Inc. caused the building's one-inch water line to be connected to the old ¾-inch water tap, though the contract called for a one-inch water meter. This is not standard practice or workmanlike performance in the plumbing industry and was the cause of the insufficient water pressure in the building.

11

> T.H. Construction, Inc. did not remedy this problem when requested. The Colbys hired an independent contract who replaced the old ¾-inch pipe at an additional cost of $7,200.00 to the Colbys. The Colbys are entitled to recover this amount from T.H. Construction.

App. p. 515. On October 29, 2010, the trial court granted T.H.'s motion to reconsider based on its review of the motion to reconsider as well as the original summary judgment pleadings. The trial court's order granting the motion to reconsider provided in part:

> The Court finds that there are issues of fact as to whether the problems with the building's water supply were the result of the manner in which T.H. Construction, Inc. connected the building's water supply to the city water main. Further, there is a question of fact as to whether T.H. Construction was given a reasonable opportunity to correct the problem. Finally, there is an issue of fact as to whether the Plaintiffs, in taking corrective action, varied from the original contract specifications and therefore whether the charges they claim are reasonable.

Id. at 522.

The Colbys argue that pursuant to Indiana Trial Rule 53.4, which provides that a repetitive motion or motion to reconsider shall be deemed denied if it is not ruled on within five days, the motion to reconsider was deemed denied on September 4, 2010. The Colbys contend that, by granting T.H.'s motion to reconsider after it had been deemed denied, they had no opportunity to respond to the trial court's "inappropriate consideration of untimely and unsworn summary judgment designations in the Motion to Reconsider."[2] Appellants' Br. p. 26.

---

[2] In their reply brief, the Colbys concede that the trial court retained the power to modify any of its rulings sua sponte. See Appellants' Reply Br. p. 7. Relying on Lake County Local Rule 4(A), which

12

In making this argument, the Colbys suggest that T.H. submitted additional designated evidence in its motion to reconsider. We disagree with this characterization. T.H.'s motion to reconsider contained arguments based on the evidence originally designated by the parties. T.H. did not designate any additional evidence in support of its motion to reconsider. As such, we cannot say that the trial court improperly considered untimely designated evidence when it granted T.H.'s motion to reconsider.[3]

## C. Denial of Summary Judgment

"[S]ummary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Sheehan Const. Co. v. Continental Cas. Co., 938 N.E.2d 685, 688 (Ind. 2010) (citing Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party, and review of a summary judgment motion is limited to those materials designated to the trial court. Id. "Only after the moving party satisfies its burden to show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law does the burden shift to the non-moving party to demonstrate the existence of a genuine determinative factual issue." Ashby v. Bar Plan Mut. Ins. Co., 949 N.E.2d 307, 310 (Ind. 2011).

---

addresses the time for responding and replying to various motions, the Colbys also argue that they were denied the opportunity to respond "because they were on notice by operation of Trial Rule 53.4 that the Motion to Reconsider had already been denied." Appellants' Reply Br. p. 8. This argument is waived because it was not timely raised. See Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived.").

[3] We consider the Colbys' challenge to the merits of trial court's ruling on the motion to reconsider as part of our analysis of the propriety of the denial of summary judgment.

## 1. *Modification*

In its summary judgment order, the trial court concluded that summary judgment was not appropriate because it was a question of fact as to whether the parties modified the contract verbally or by their conduct. Indeed, "[p]arties to a contract may mutually modify their contractual undertakings, and it is not always necessary to prove a written or oral modification of a contract because modification of a contract can be implied from the conduct of the parties." City of Indianapolis v. Twin Lakes Enterprises, Inc., 568 N.E.2d 1073, 1084 (Ind. Ct. App. 1991), trans. denied. "Even a contract providing that any modification thereof must be in writing may nevertheless be modified orally." Id. The modification of a contract, because it is also a contract, requires all of the elements of a contract. Id.

In their motion for summary judgment, the Colbys claimed that T.H. was not entitled to payments for the unsigned change orders. It was undisputed that the parties did not execute written change orders prior to the completion of the work, and the Colbys claimed that they did not assent to the modification of the contract to allow change orders to be approved orally. In support of this assertion, they relied on their affidavits in which they stated, "Contractor never mentioned modifying the Contract to allow change orders to be approved orally and we never discussed any such modification with him. We did not agree to change the Contract to allow change orders to be approved orally." App. pp. 239, 242.

In response, T.H. asserted and the designated evidence showed that changes were discussed between the parties before, during, and after they were made and that the

14

changes were agreed to orally. T.H. also pointed out that the Colbys had to modify their loan to finance a $24,757 change to the parking lot and that the Colbys approved payment for the changes after reviewing sworn construction statements as each draw was made and at closing.

We agree with the trial court that the designated evidence showed a genuine issue of material fact regarding whether the parties impliedly modified the contract. Accordingly, the trial court properly denied the Colbys' motion for partial summary judgment.

### 2. Water Pressure

Although the trial court initially granted summary judgment in favor of the Colbys on this issue, the trial court later granted T.H.'s motion to reconsider and concluded there was an issue of fact regarding whether the problems were the result of the manner in which T.H. connected the building's water supply to the city water main, whether T.H. was given an opportunity to correct the problem, and whether the charges claimed by the Colbys were reasonable. The Colbys argue the trial court improperly concluded that there were questions of fact for trial on this issue.

In support of their motion for summary judgment, the Colbys relied on the affidavit of James Zack, a licensed plumber, who stated that the contractor who had performed the plumbing work did not replace the old water tap, that the newly installed one-inch water line connected to an existing ¾-inch tap, and that this was not standard practice or workmanlike performance in the plumbing industry and was the cause of the water pressure problem. Zack explained that to correct the problem, he installed a 1½-

15

inch tap and a 1½-inch line from the tap to the building that connected to the one-inch line in the building.

The Colbys claim that Zack's affidavit was "[t]he only summary judgment proof on this issue . . . ." Appellants' Br. p. 27. Referring to the contract and Hovanec's affidavit, however, T.H. established genuine issues of material fact for trial. T.H. asserted that there were questions of fact as to whether the contract covered the tap, whether the tap had anything to do with the water pressure issue, and whether the replacement of the tap made a significant change to the water pressure issue. Based on our review of the contract and affidavit, we believe there were genuine issues of material fact regarding whether T.H. breached the contract by connecting the one-inch line to the ¾-inch tap. Thus, regardless of whether the Colbys were required to give T.H. an opportunity to cure the problem or whether the corrective action was reasonable, because there were genuine issues of material fact on the issue of breach, the trial court properly denied the Colbys' request for summary judgment.

### III.  Findings and Conclusions

Finally, the Colbys argue that the findings of fact issued by the trial court after trial do not support its conclusions. A trial court's "findings or judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of witnesses." Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000) (citing Ind. Trial Rule 52(A)). We first consider whether the evidence supports the factual findings, and then we consider whether the findings support the judgment. Id. Although we defer substantially to findings of fact, we do not defer to

16

conclusions of law.  Id.  "A judgment is clearly erroneous if it relies on an incorrect legal standard."  Id.

The Colbys did not include a transcript of the trial as part of the record on appeal and do not dispute any of the trial court's 106 findings of fact.  Therefore, our review is limited to whether the trial court's findings support its conclusions.

### A.  Change Orders

The Colbys argue, "There was no finding that could reasonably lead to the conclusion that the Colbys assented to allow Contractor to charge for extras without signed change orders."  Appellants' Br. p. 31.  According to the Colbys, although "they may have agreed to construction changes, they did not agree to dispense with the requirement of written change orders for changes that would increase the contract price."  Id. at 30.  They assert that they believed at all times the change orders provision remained a part of the contract, protecting them from extra charges.  Although the Colbys do not cite any specific findings that support their argument, they refer to their "four-month protest against closing" and claim that "[t]hey eventually closed due to pressure from their lender . . . ."  Id. at 31.

Simply put, the Colbys have not shown that the trial court's findings do not support its conclusions.  The trial court's findings referenced detailed discussions between Hovanec and either Timothy or Holly or both regarding various changes to the project.  The trial court also found in part:

> 53.     Well before this stage of the process, Terry Hovanec
> and the Colbys had developed a good working relationship on
> the construction process.  Timothy Colby would come by

17

from time to time and Holly Colby was regularly at the construction site. Holly Colby was much more involved in the construction process than Timothy Colby and was usually the one who met with Chicago Title Company to authorize the construction draws. . . .

\* \* \* \* \*

60. The numerous changes listed above show the involvement of the Colbys in the details of the construction while it was in progress. Each of these changes were approved by one or both of the Colbys at different stages of the construction project after discussions with Terry Hovanec. These discussions included the costs of the additions, the savings from deletions, and whether the changes kept the project overall within the contract amount of $683,816 [sic]. Neither Terry Hovanec nor the Colbys demanded that any of the changes listed above were to be in writing before they were made by T.H. Construction or its subcontractors during construction. Terry Hovanec believed that his working relationship with the Colbys was such that he did not feel he needed the protection of signed written change orders. Holly Colby did not think written change orders were necessary unless the cost of the construction project went over the contract amount of $683,916.

\* \* \* \* \*

74. The Colbys approached Terry Hovanec with a request that additional parking be added across the south side of the building across the area onto which the rental units would have extended. Douglas Homeier of SH Engineers and Surveyors engineered a plan that would add ten additional parking places on the south side of the building and, as required by John Phipps, would enlarge the detention pond at the far south end of the lot to account for the added impervious parking area. These plans were completed on June 5, 2008, and a copy of the plans was provided to the Colbys. These plans were admitted at trial as Defendant's Exhibit 12.

75. After the engineering was completed, Terry Hovanec obtained quotes for the added parking area and enlarged

18

detention pond. The total cost of additional parking came to $24,757. Because the added cost of the parking lot would increase the cost of the construction beyond $683,916, the Colbys would be required to increase their construction loan with Centier Bank. Terry Hovanec prepared a detailed change order in writing that was submitted to Centier Bank at Jack Esala's request. This change order was admitted into evidence at trial as Plaintiff's Exhibit 43.

76. The Colbys sought and obtained a modification of their construction loan that reflected the increase of the cost of the construction by $24,757 from $683,916 to $708,673.

\* \* \* \* \*

95. The Colbys made no complaints about Terry Hovanec to Jack Esala, their loan officer, or to Mary Zarnecki, a close personal friend of Holly Colby who recommended Terry Hovanec to the Colbys, until after the water pressure became an issue.

96. Sometime after November 3, 2008, Jack Esala provided the Colbys with copies of the October 20, 2008, sworn construction statement and the "change orders" provided by Terry Hovanec. At this meeting, the Colbys indicated that they needed to discuss the matter further.

97. By the end of December, 2008, the Colbys had still not moved forward to close on the construction loan or to resolve any issues with T.H. Construction. As shown in Plaintiff's Exhibit 57, the Colbys had expressed an intention on not paying Terry Hovanec but the bank was suggesting a way that the subcontractors could get paid. This would involve placing monies in escrow with the title company.

98. By January 16, 2009, Jack Esala sent a letter to the Colbys on behalf of Centier Bank indicating that the financing had already been extended once to give the Colbys an opportunity to resolve their differences with T.H. Construction, but the bank was growing impatient. This letter was introduced at trial as Plaintiff's Exhibit 58. The letter suggested to the Colbys again that escrowing the funds at closing would permit closing to move forward.

99. Not until March 2009, was a final closing arranged by the Colbys.

\* \* \* \* \*

102. At the closing on March 20, 2009, Star Lugar of Chicago Title went over the March 18, 2009, sworn construction statement line by line with the Colbys. In response to the observation that the total cost of the project had gone up from its original number, the only response came from Holly Colby who said that changes were made. The Colbys signed all closing documents, all liens were released, and T.H. Construction and all the subcontractors were paid in full. No monies were escrowed.

App. pp. 540-59.

The trial court concluded in part:

107. The contract called for changes in construction to be put into writing and signed by all parties. This was not done for any of the changes with the exception of the additional parking added in the summer of 2008. Modification of a written contract can be implied from the actual conduct of the parties. Even a contract providing that any modification must be in writing may be modified orally. City of Indianapolis v. Twin lakes Enter, Inc., 568 N.E.2d 1073 (Ind. Ct. App. 1991), trans. denied. By their conduct, the parties clearly had an understanding that written change orders were not required for agreed upon changes to be made. Only the bank required a detailed change order for the additional parking, and even then it was not signed by all the parties until the seventh draw on August 15, 2008. Therefore T.H. Construction may justly claim payments for additions to the contract that were agreed upon by the Colbys, even if an agreement for the changes was not put in writing by the parties as required by the contract.

108. All of the changes set forth in the findings of facts above were discussed with, and agreed upon, by one or both of the Colbys before they were implemented with the exception of the increased size of the slab footing and the

20

additional steel posts required for the vinyl fence. Even then, Timothy Colby approved the change in the footings after the fact and the additional steel posts were required by the town.

109. Prior to any payments being made to T.H. Construction or its subcontractors, the sworn construction statements provided to the Colbys from October 20, 2007, through August 11, 2008, showed the differences in any line items and were consistent with the changes and the time line established by the testimony and evidence at trial. Some of the items, such as landscaping, flooring and cabinetry were items over which Holly Colby particularly exercised primary if not sole control. Before any payments were made to T.H. Construction or its subcontractors based on these sworn statements, one or both of the Colbys were required to sign their approval for disbursements. The failure of the Colbys to raise a complaint prior to payment constituted a waiver.

110. The contract price established at the time the contract was signed was $683,916. This price did not increase until the Colbys requested additional parking at a cost of $24,757. This increase was at the request of the Colbys and was the result of their free and voluntary act. This took the total cost of construction up to $708,919 with the full knowledge and consent of the Colbys. It was not the result of deception by T.H. Construction.

111. T.H. Construction did not breach the contract by failing to deliver goods and services specified under the contract. All goods and services promised under the contract were delivered except those omitted or substituted by the agreement of the Colbys.

\* \* \* \* \*

113. T.H. Construction did not breach the contract with the Colbys and the Colbys have not been damaged in the amount of $60,000 as claimed. The Colbys received the full benefit of their bargain and received all of the goods and service for which they paid. The Colbys would be unjustly enriched if, after not relying on the signed written change order language of the contract which construction was pending, they now

> claimed reimbursement for things they agreed to omit or add
> to the construction.

Id. at 559-61.

Based on the limited record before us, it is not entirely clear which charges, other than the parking lot, raised the cost beyond the fixed contract price.[4] Regardless, the Colbys have not shown that the the trial court's findings do not support the conclusion that the Colbys, based on their conduct during construction, modified the change orders provision of the contract. This claim is unavailing.[5]

### B. Water Pressure

The Colbys also argue that the trial court's findings "compel the conclusion that Contractor breached its contract to design and build the building with proper specifications for adequate water supply and to follow those specifications."[6] Appellants' Br. p. 33. In support of this argument, the Colbys claim that the one-inch water line

---

[4] In their brief in support of partial summary judgment, the Colbys requested damages for the change orders totaling $72,507. See App. p. 268. On appeal, the Colbys assert that they should have been awarded $31,899.00 in damages for improper overcharges. See Appellants' Reply Br. p. 11. In support of this calculation, the Colbys direct us to an exhibit attached to an affidavit designated by T.H. in its response to the Colbys' motion for partial summary judgment. Even if we were to consider this summary judgment evidence to determine whether the evidence admitted at trial supports the Colbys' most-recent calculation of charges, that document shows a final loan amount of $715,815. The contract price of $683,916 taken with $24,757 for the increased cost of the parking lot equals $708,673, leaving only $7,142 in additional charges.

[5] The Colbys make arguments regarding unjust enrichment, waiver, quasi-contract, and unjust enrichment throughout their brief. However, because the trial court's decisions were based on the modification of the contract, we need not address these issues.

[6] To the extent the Colbys argue breach of warranty, this issue is waived for failure to support the argument with cogent argument. See Ind. Appellate R. 46(8)(a) (requiring arguments to be supported by cogent reasoning and citations to authorities, statutes, and the Appendix or parts of the record on appeal relied on).

22

could have been a problem if the ¾-inch tap was restricted by corrosion and that T.H. offered to install a new tap at a cost of $7,200.

Based on the trial court's findings, however, it is clear that T.H. offered to install the tap to satisfy the Colbys, not as a concession that the design or construction was so deficient as to amount to a breach of the contract. The trial court's findings on this issue provide:

> 83.     Within one week after occupying the building, Timothy Colby called Terry Hovanec with a concern about the water pressure to the building's exterior hose bibs. The specific issue was that two hoses to water the grass could not run well at the same time. In response Terry Hovanec went to the site with a pressure gauge to check the water pressure. The reading was 32 to 35 pounds.
>
> 84.     Because Terry Hovanec considered this water pressure to be low, he called the plumber who worked on the construction project, Tom Fistrovich at Rhodes Plumbing. Tom Fistrovich suggested that a booster pump be installed in the building to increase the pressure. Terry Hovanec then met personally with Timothy Colby and offered to install the pump at no cost. Timothy Colby declined this offer and indicated that he did not want a booster pump. At this meeting, Timothy Colby indicated to Terry Hovanec that he had talked to an unidentified town employee who purportedly told Timothy Colby that the building's new one-inch water line from the town water system must have been installed with a kink in it.
>
> 85.     After the meeting with Timothy Colby ended, Terry Hovanec went to the office of Tim Gembala, supervisor of the water and sewer department at the Town of Highland Department of Public Works. . . . The question was asked as to whether the building's one-inch water line connection to the existing ¾" tap at the town's water system could contribute to lower water pressure. Tim Gembala indicated that such a connection should only be a problem if the tap was restricted by corrosion. . . .

23

86.     After the meeting with Tim Gembala, Terry Hovanec again met personally with Timothy Colby to explain what he had learned about the town's water pressure. . . .  When the subject of the ¾" water tap was discussed, Timothy Colby asked why a new water tap had not been installed.  Terry Hovanec told Timothy Colby that it was not necessary to install a new water tap at added costs because the existing tap should have been more than sufficient for the building.

* * * * *

88.     In an effort to satisfy the client, Terry Hovanec suggested the possibility of splitting the cost for a new one-inch water tap to be installed.  Timothy Colby verbally agreed with this proposal while they were together.  The next morning, however, Terry Hovanec received a telephone call from Timothy Colby during which Timothy Colby indicated to Terry Hovanec that he did not believe that he should have to pay for a new water tap to be installed.  Terry Hovanec responded by offering to install a new [] 1" water tap at no cost to the Colbys if Timothy Colby believed that would solve the problem.

App. pp. 552-54.

Based on these findings, we are not convinced that the trial court was compelled to conclude that T.H. breached the contract when it connected the one-inch water line to the ¾-inch tap.  Without more, the Colbys have not established that the trial court's findings do not support its conclusions on this issue.

**Conclusion**

The Colbys have not established that the trial court improperly granted T.H.'s motion to withdraw and amend admissions.  The Colbys have not shown that the trial court improperly refused to strike portions of T.H.'s designated evidence or improperly granted T.H.'s motion to reconsider.  The Colbys have not established that the trial

24

court's denial of summary judgment was improper. Finally, the Colbys have not shown

that the trial court's findings do not support its conclusions. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.